**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ASMAR THOMPSON,

    Plaintiff,

v.

COMMISSIONER GARY M. LANIGAN,
et al.,

    Defendants.

Civil Action No. 16-1913 (MAS) (TJB)

OPINION

**SHIPP, District Judge**

*Pro se* Plaintiff Asmar Thompson, confined at New Jersey State Prison in Trenton, New Jersey, filed the instant Complaint pursuant to 42 U.S.C. § 1983, alleging various violations of his constitutional rights and other related state law claims. Presently before the Court is a Motion to Dismiss by Defendants Commissioner Gary M. Lanigan, Stephen D'Ilio, Officer Rodriguez, Officer Sylvester, Sergeant Gil ("Sergeant Gil" or "Gil"),[1] Hearing Officer DiBenedetto, Lieutenant Kennedy, and Dr. Ralph Woodward ("Moving Defendants"), seeking to dismiss certain claims against them ("Motion"). (ECF No. 42.) Plaintiff did not file opposition to the Motion. Rather, Plaintiff filed two motions to supplement/amend, which are also before the Court. (ECF Nos. 43, 69.) For the reasons stated below, the Court grants Defendants' Motion in part, and denies it in part, and denies the motions to amend.

---

[1] Although Plaintiff refers to Sergeant Gil as "Sargent O'Gil" in his pleadings (Am. Compl. 1, ECF No. 31), the incident reports attached to the Complaint demonstrate that: (1) the last name for this defendant is "Gil"; (2) the first initial for this defendant is "O"; and (3) this defendant's title is "Sergeant." (Compl. 21, ECF No. 1.)

I. **FACTUAL BACKGROUND**

For the purposes of this Opinion, the Court accepts all facts alleged in the Complaint as true, and in the light most favorable to Plaintiff. Plaintiff's claims appear to arise out of a series of incidents in which Plaintiff was involved in physical altercations with other inmates. (*See* Compl. 9, ECF No. 1.) Plaintiff alleges that certain inmates threatened him with physical harm, and later carried out those threats on at least two separate occasions. (*Id.* at 9-10). The first threat was allegedly made sometime in April of 2014, and Plaintiff asserts that he informed numerous prison officials of this threat and requested protective custody. (*Id.* at 9.)

On April 26, 2014, the first assault occurred. (*Id.*) Plaintiff alleges that another inmate, under the direction of the inmate who made the initial threat, "threw urine and feces on [Plaintiff] and grabbed [his] shirt through the cell door bars banging [his] head and punching." (*Id.*) Plaintiff was allegedly given false disciplinary charges for the incident, and was removed from the general population because of those charges. (*Id.*) The disciplinary charges were ultimately upheld by the state appellate court. *See Thompson v. N.J. Dep't of Corr.*, No. A-1077-14T1, slip op. at 2 (N.J. Sup. Ct. App. Div. June 1, 2016) (Moving Defs.' Br., Ex. B, ECF No. 42-1 at 67).[2]

On May 1, 2014, Plaintiff was allegedly told that he was being placed back into the general population, and Sergeant Gil, Officer Rodriguez, and Officer Terry[3] were to escort him back to his cell. (Compl. 9.) Plaintiff pleaded with Gil to not take him back, for fear of another assault, and when that did not work, Plaintiff stated that he was going to hurt himself, which resulted in the

---

[2] The Court takes judicial notice of the state court opinion, not for the truth of its factual findings, but for its ultimate disposition. *See Jonas v. Gold*, 627 F. App'x 134, 137 n.4 (3d Cir. 2015) ("The District Court was entitled to take judicial notice of prior opinions to establish the procedural history of the case.").

[3] Although Officer Terry is a named defendant, he is not a moving defendant because he has not been properly served.

2

doctor placing Plaintiff on constant watch. (*Id.*) Plaintiff alleges that once he was escorted to constant watch, Sergeant Gil pushed him inside the cell, pushed him to his knees, and sprayed him with spray agents, following which all of the officers punched him, kicked him and slammed him. (*Id.* at 10.) Plaintiff also alleges that he had a seizure. (*Id.*) Plaintiff further alleges that he was then taken to the medical department in leg restraints, and on the way there, he was again beaten inside of an elevator. (*Id.*) Plaintiff was allegedly told to not report the incident. (*Id.*)

The incident report filed by Gil, however, which Plaintiff attached to the Complaint, tells a vastly different story. According to Gil, the officers were not initially escorting Plaintiff back to his cell. (*Id.* at 21.) Instead, they were ordered to take Plaintiff to administrative segregation. (*Id.*) Plaintiff was escorted to the medical staff for an evaluation prior to placement in administrative segregation. At that time, Plaintiff announced that he refused to go anywhere and was going to hurt himself if moved. (*Id.*) The doctor, therefore, ordered Plaintiff to be placed on constant watch. (*Id.*) Plaintiff was then escorted to constant watch and was strip searched per prison regulations. (*Id.*) Plaintiff subsequently became belligerent and assaulted the escorting officers. (*Id.*) Gil stated that in order to subdue Plaintiff, force was necessary, and he

> punched the inmate several times on the face and he was then wrestled to the ground by Officers Rodriguez, Terry, Salvador and Matir. [He] then attempted to deploy chemical agents . . . which failed to deploy correctly. As the inmate became more aggressive and in an attempt to defend [him]self from the aggression of the inmate, [he] hit the inmate with the can of OC once, on left side of the face and called for the activation of the Emergency Code 33.

(*Id.*) The Complaint alleges that as a result of this incident, Plaintiff lost all hearing in his left ear, which still persisted at the time Plaintiff filed the Complaint. (*Id.* at 10.) Plaintiff also alleges that

3

his personal property, including his legal mail, was taken, destroyed, or tampered with while he was on constant watch.[4] (*Id.* at 11.)

Approximately a month after the aforementioned incident, Plaintiff was released from constant watch, and placed back into the general population. (*Id.* at 10.) Still fearful of the threats made against him, Plaintiff allegedly wrote to Defendant D'Ilio and the ombudsman regarding the need for protective custody. (*Id.*) Plaintiff's requests were allegedly denied by D'Ilio for lack of specific information, although Plaintiff insists that the necessary information "has always [been] given verbal[ly] and in writ[]ing." (*Id.*) On July 26, 2014, Plaintiff was again assaulted by the same inmate from the first assault, when the inmate threw hot water on Plaintiff's right arm, which burned Plaintiff. (*Id.*) Plaintiff alleges that the incident was not reported by the officers, nor medical attention immediately provided to him for the burn. (*Id.*) Plaintiff further alleges that he received medical attention the next day only because he fought another inmate who allegedly aided the inmate that assaulted Plaintiff. (*Id.*) Plaintiff asserts a denial of medical services claim against several defendants, but only Dr. Woodward is a Moving Defendant with respect to that claim. Plaintiff alleges that he sought help from Dr. Woodward by way of written correspondence, but Plaintiff does not allege that Dr. Woodward acknowledged or sent any response to the correspondence. (*Id.* at 13, 16.)

## II. **STANDARD OF REVIEW**

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need

---

[4] Plaintiff appears to allege that his personal property was taken by both the officers and the inmate who assaulted him. (*Id.* at 11.)

4

only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Connelly v. Lane Constr. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (precedential). On a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In determining the sufficiency of a pro se complaint, the Court must be mindful to accept its factual allegations as true and to construe it liberally in favor of the plaintiff. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

### III. DISCUSSION

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that

the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-67 (3d Cir. 2013).

Here, the Court construes the Complaint as raising seven federal claims against the Moving Defendants: (1) an Eighth Amendment excessive force claim for the May 1, 2014 incident; (2) an Eighth Amendment failure to protect claim for not placing Plaintiff in protective custody, which resulted in the April 26, 2014 and July 26, 2014 assaults by another inmate; (3) a due process claim for the allegedly false disciplinary charges stemming from the May 1, 2014 incident; (4) a claim for the taking and destruction of Plaintiff's personal property; (5) a First Amendment denial of access to the courts claim for tampering with Plaintiff's legal mail; (6) a retaliation claim for Plaintiff's filing of grievances; and (7) a denial of medical services claim against Dr. Woodward. Plaintiff also raises several state law tort claims, which the Court also addresses together below. Moving Defendants do not move to dismiss the failure to protect, destruction of personal property, denial of access to the courts, or retaliation claims, so the Court does not address them here.

### A. Excessive Force

Plaintiff asserts an excessive force claim for the May 1, 2014 incident. Based on Plaintiff's allegations, the Court construes the Complaint as raising this claim against Gil, Rodriguez, and Sylvester, who were the escorting officers that day.[5] Moving Defendants argue that Plaintiff has failed to state a claim upon which relief may be granted, primarily upon the assertion that the escorting officers were entitled to determine, under their discretion, how much force was necessary

---

[5] The Court does not construe the Complaint as raising excessive force claims against any other supervisory or grievances officers, because there are no allegations in the Complaint that Plaintiff filed any grievances for excessive force. Indeed, most of the allegations regarding the May 1, 2014 incident concern Plaintiff's disciplinary proceeding, which the Court addresses *infra*.

6

to subdue Plaintiff, and that they were determined to have acted in a good faith effort in order to maintain discipline during Plaintiff's disciplinary proceeding. (Moving Defs.'s Br. 34-35, ECF No. 42-1.) The Court disagrees.

In reviewing excessive force claims under the Eighth Amendment, courts must determine whether the "force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Monroe v. Phelps*, 520 F. App'x 67, 70 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Whether the force applied was excessive requires the weighing of several factors, including: (1) the need for force, (2) the relationship between that need and the amount of force used, (3) the extent of the injury, (4) the extent of the threat to safety "as reasonably perceived by responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 231 (1986)). A finding that excessive force was used, or vice versa, must depend on the extent of the force and the surrounding circumstances, not upon the resulting injury. *Id.* (citing *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002)).

Here, there is no dispute that force was used by the escorting officers. Although the versions of the facts proffered by Plaintiff and Gil's incident report differ wildly, they at least agree that force was applied by the escorting officers. Whether that force was applied in good faith is a factual issue, and on a motion to dismiss, the Court must construe Plaintiff's allegations as true. Indeed, Plaintiff contests Gil's report that he was belligerent, and contends that his subsequent disciplinary charges were fabricated. Moving Defendants, on the other hand, argue that because Plaintiff's disciplinary charges were upheld on appeal, it serves as a judicial finding that the escorting officers acted in good faith. The Court, however, has reviewed the state court's decision, and there was no finding as to the reasonableness regarding the use of force. Rather, the decision

dealt with the validity of Plaintiff's disciplinary charges, and therefore focused on Plaintiff's conduct.

The Court agrees that, based on the findings of the state court, the escorting officers potentially had a need to use force. Nevertheless, Defendants' argument amounts to the untenable position that the Constitution gives them the unfettered discretion to decide how much force is necessary once the need to use force has been established. Of course, that clearly goes against established precedent. Regardless of whether the need to use force has been established, the escorting officers' use of force must still be scrutinized to determine whether the force was undertaken in good faith and in order to maintain discipline, or whether the force was applied maliciously or sadistically to cause harm. Moving Defendants cite to *Whitley* and *Hudson* to support their argument. Those cases, however, do not stand for the proposition that once a need for force has been established, that is the end of the inquiry. As the *Hudson* Court explained:

> [O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance." We accordingly concluded in *Whitley* that *application of the deliberate indifference standard is inappropriate* when authorities use force to put down a prison disturbance. Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320-21) (emphasis added). Even if there was a need for force, there remains the question of whether the appropriate amount of force was applied. Indeed, if the need for force was an affirmative defense, the first factor of *Whitley*'s five-factor test would be dispositive and there would be no need for the other four factors. Construing

the Complaint in the light most favorable to Plaintiff, the Court cannot find that Plaintiff's allegations are so devoid of merit as to render his excessive force claim speculative. Accordingly, Defendants' Motion is denied on this ground.

### B.  Due Process Claim

Plaintiff asserts that the imposition of the disciplinary charges upon him for the May 1, 2014 incident was a violation of his due process rights. Moving Defendants argue that Plaintiff's due process claim is barred by the doctrine of res judicata, because the state court has already decided this issue on appeal of the disciplinary charges. Moving Defendants misapply the doctrine.

"[F]ederal law [applies] res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279 (3d Cir. 2016). Moving Defendants' res judicata defense does not survive the second prong—the parties in the disciplinary proceeding were the State and Plaintiff, whereas Plaintiff's claim here is against various individual defendants. Plaintiff may or may not be barred by the doctrine of issue preclusion[6] based on the state court's findings. The Court need not decide that here, however, because Moving Defendants are correct that the state court's decision bars Plaintiff's due process claim, albeit under a different doctrine.

Plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). As the Supreme Court explained:

---

[6] "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.*, 63 F.3d 1227, 1231-32 (3d Cir. 2016) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).

9

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87. In *Wilkinson v. Dotson*, the Supreme Court further clarified its *Heck* holding, finding that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." 544 U.S. 74, 81-82 (2005).

Plaintiff raised his due process claim during his appeal, the state court addressed that claim, and it upheld the disciplinary charges, finding that Plaintiff received the due process required. *Thompson*, slip op. at 4-8. Success on Plaintiff's due process claim here would necessarily demonstrate the invalidity of the state court's decision, which would necessarily imply that the disciplinary charges were invalid. In order to raise this claim under § 1983, Plaintiff must show that the charges have already been reversed, expunged, or invalidated, which Plaintiff cannot do. As such, the Motion is granted on this claim, and the claim is dismissed without prejudice. Defendants DiBenedetto and Kennedy are dismissed from the case, as the only claims asserted against them are in relation to the disciplinary proceedings.

### C. Denial of Medical Services Claim Against Dr. Woodward

Plaintiff asserts a denial of medical services claim against Dr. Woodward based on a single allegation in the Complaint that provides, "I have seeked [sic] outside help from a Dr. Ralph Woodward the Director of Medical Services at the Bates Building P.O. Box 863, Trenton NJ

10

08625, it was to no avail." (Compl. 13.) Plaintiff acknowledges that he only sent Dr. Woodward a single piece of correspondence. (*Id.* at 8.) Moving Defendants argue that Plaintiff has failed to state a claim upon which relief may be granted, and the Court agrees.[7]

To the extent Plaintiff asserts that Dr. Woodward is liable because he is the director and, therefore, in charge of all medical staff, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* While affirmative action by a supervisory official is not required to state a § 1983 claim, Plaintiff must still show that "a supervisor . . . had knowledge and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd on other grounds); *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").

There is case law suggesting that repeated written complaints to a supervisory defendant of an *ongoing* constitutional violation may be sufficient to establish deliberate indifference by circumstantial evidence. *See, e.g., Cardona v. Warden – MDC Facility*, No. 12-7161, 2013 WL 6446999, at *5 (D.N.J. Dec. 6, 2013) (holding that plaintiff stated a valid denial of medical services claim against the prison warden because plaintiff alleged an ongoing constitutional violation, and alleged that the warden was made aware of the ongoing violation through repeated written requests); *Carter v. Smith*, No. 08-279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) ("Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is

---

[7] Plaintiff also asserts a denial of medical services claim against other defendants, but those defendants did not participate in this Motion.

11

personally involved in that violation because he is confronted with a situation he can remedy directly.") (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008)). Here, however, Plaintiff sent a single piece of correspondence to Dr. Woodward. There is no allegation that Dr. Woodward acknowledged receipt of the correspondence, nor any allegation that he responded to the correspondence. The sending of a single piece of correspondence, without more, is not sufficient to show that Dr. Woodward had actual knowledge of Plaintiff's medical issues and the alleged denial of services, and it certainly falls far short of establishing that Dr. Woodward acquiesced in the denial of medical services. This does not satisfy the pleading standard under Rule 8. As such, the Motion is granted on this claim, and the claim is dismissed without prejudice. Dr. Woodward is also dismissed from the case.

### D. State-Law Claims

Moving Defendants argue that Plaintiff's state-law claims should be dismissed because Plaintiff has failed to establish this Court's jurisdiction since Plaintiff failed to file a notice of tort claims as required by state law. The Court agrees.

Under the New Jersey Tort Claims Act ("NJTCA"), when asserting a state tort claim against a public entity or a public employee, a plaintiff must give notice of the claim within ninety days after the cause of action has accrued. *See* N.J.S.A. § 59:8-8; *Konah v. City of Newark*, No. L-962-10, 2011 WL 1598957, at *2 (N.J. Sup. Ct. App. Div. Apr. 29, 2011); *Brown v. Twp. of Neptune*, No. 11-7162, 2014 WL 3517776, at *7 (D.N.J. July 15, 2014). This notice requirement applies to common law intentional tort claims, *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004), as well as negligent conduct, *Velez v. City of Jersey City*, 180 N.J. 284, 292-93 (2004). This ninety-day notice period may be extended by a court upon a finding of "sufficient reasons constituting extraordinary circumstances for [the plaintiff's] failure to file notice of claim

within the period of time prescribed," but only if the plaintiff files a late notice "within one year after the accrual of his claim[.]" N.J.S.A. § 59:8-9; *see Slater v. Hardin*, No. L-8574-09, 2014 WL 923337, at *5 (N.J. Sup. Ct. App. Div. Mar. 11, 2014). Plaintiffs who do not comply with this requirement are "forever barred" from recovering on their claims. *See* N.J.S.A. § 59:8-8. Notice is important because it provides state agencies the "opportunity to investigate the claims, and take disciplinary or other appropriate action to rectify inappropriate behavior or flawed practices[.]" *Mawhinney v. Francesco*, No. 08-3317, 2010 WL 2557713, at *9 (D.N.J. June 22, 2010) (quoting *Velez*, 180 N.J. at 293). Failure to file a notice of claim is a ground for dismissal at the motion to dismiss stage. *See Williams v. Westampton Police Dep't*, No. L-1144-13, 2014 WL 5393184, at *3 (N.J. Sup. Ct. App. Div. Oct. 24, 2014).

Here, because Plaintiff brings claims for relief under state law, he must follow established state procedures. *See Murphy v. Bloom*, 443 F. App'x 668, 670 (3d Cir. 2011) ("The District Court [] properly recognized that [the plaintiff] did not follow the proper procedure for bringing a [state law] claim . . . as required by state law."). There is no allegation in the Complaint that Plaintiff filed the required notice of tort claims. Under New Jersey law, Plaintiff is required to file the notice of tort claims before he *initiates* any state law tort action against Moving Defendants. *See* N.J.S.A. § 59:8-3. As such, Plaintiff must demonstrate that at the time he filed the Complaint, such notice of claims had already been served. *See Ptaszynski*, 371 N.J. Super. at 343 (holding that the notice requirement under the Tort Claims Act is a jurisdictional precondition to filing suit). Here, Plaintiff failed to make the required demonstration in the Complaint. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . the grounds for the court's jurisdiction[.]"). Because the Complaint does not allege that Plaintiff filed a notice of tort claims with respect to the Moving Defendants, Plaintiff has failed to establish, under Rule 8, that this

Court has jurisdiction over Plaintiff's state law claims. Accordingly, the Motion is granted on Plaintiff's state law claims, and those claims are dismissed without prejudice for lack of jurisdiction. *See Bethea v. Roizman*, No. 11-254, 2012 WL 2500592, at *7 (D.N.J. June 27, 2012) (dismissing plaintiff's state law tort claims for his failure to plead compliance with the notice requirement under the Tort Claims Act).

### E. Lanigan

Moving Defendants argue that Plaintiff's claims against Lanigan should be dismissed because Plaintiff fails to make a single factual allegation against Lanigan. The Court agrees.

The Court has reviewed the Complaint, and the only mention of Lanigan is that he was "the Commissioner of the Department of Corrections and an employee in the State of New Jersey and is being sued in his individual and official capacity[.]" (Compl. 2.) Lanigan is not mentioned anywhere else in the Complaint. To the extent that Plaintiff's claim against Lanigan is solely premised upon his position as the Commissioner and, therefore, as the superior of all other defendants, as the Court stated above, there is no respondeat superior liability in § 1983 suits. As the Complaint is entirely devoid of factual allegations against Lanigan, there is no support for any supervisory liability claim against Lanigan. As such, to the extent the Complaint can be construed as raising any federal claims against Lanigan, the Motion is granted, and those claims are dismissed. Lanigan is dismissed from this case.

### F. Motions to Supplement/Amend

Finally, the Court addresses Plaintiff's two motions to supplement/amend. To the extent that Plaintiff's two motions can be construed as motions to amend under Federal Rule of Civil Procedure 15(a), Local Civil Rule 7.1(f) requires the moving party to "attach to the motion a copy of the proposed pleading or amendments and retain the original until the Court has ruled." Plaintiff

attached no such proposed pleading to either motion. *See also Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 705 n.2 (1982) ("[O]nce accepted, an amended complaint replaces the original.") (Brennan, J., concurring in judgment); *Snyder v. Pasack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit."); *Love v. Dep't of Corr.*, No. 13-1050, 2014 WL 46776, at *3 n.2 (D.N.J. Jan. 6, 2014) ("Plaintiff should note that an amended complaint supersedes prior complaints.") (citing *Snyder*). As such, to the extent that either motion can be construed as a motion to amend, they are denied.

To the extent that either motion can be construed as a motion to supplement, Rule 15(d) states that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading." *7-Eleven, Inc. v. Sodhi*, No. 13-3715 (MAS), 2016 WL 541135, at *8 (D.N.J. Feb. 9, 2016) (quoting *Hassoun v. Citnmino*, 126 F. Supp. 2d 353, 360-61 (D.N.J. 2000)).

Here, Plaintiff seeks to add: (1) a claim of alleged verbal harassment and body search, which resulted in "physical touch to both private parts" (ECF No. 43 at 2); (2) a claim for violation of the First Amendment based on an officer removing a copy of Plaintiff's § 1983 petition from his cell (*id.*); (3) a claim that Plaintiff was retaliated against for filing grievances when he was moved to a different cell and denied a job change (*id.* at 3); (4) a claim that his personal property was taken/destroyed (*id.*); (5) a claim that his legal mail had been opened (*id.* at 4); and (6) claims regarding another alleged assault that occurred on November 17, 2016, i.e. more than two years

15

after the alleged assaults complained of in the original Complaint (ECF No. 69 at 1). The Court finds that Plaintiff's requested relief is not warranted as these additional claims are remote and disconnected from the original pleading. Indeed, all of the events that complained of in the proposed supplements occurred more than two years after the alleged assaults in the original Complaint and result in new claims that are neither factually nor legally related to the original claims. "[P]ermitting a prisoner to file a supplemental complaint containing claims only tangentially related to those in the initial complaint would 'defeat the purpose of Rule 15(d), as well as the intention behind the Prison Litigation Reform Act . . . [by allowing prisoners] to tack on unrelated claims in a single lawsuit and avoid the payment of the required filing fee in a new action.'" *Williams v. Reinhardt*, No. 15-0121, 2017 WL 452004, at *5 (D.N.J. Feb. 2, 2017) (quoting *Dockery v. Wetzel*, No. 11-1368, 2013 WL 664931, at *3 (M.D. Pa. Feb. 22, 2013)). Accordingly, to the extent the motions can be construed as motions to supplement, they are denied.

### IV.  CONCLUSION

For the reasons set forth above, the Court DENIES the Motion on Plaintiff's excessive force claim, but GRANTS the Motion as to the due process, denial of medical services, and state law claims. Defendants DiBenedetto, Kennedy, Dr. Woodword, and Lanigan are DISMISSED from the case.[8] Plaintiff's motions to supplement/amend are DENIED.

s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE

**Dated:** April 27, 2017

---

[8] Contrary to Moving Defendants' argument, the Court does not dismiss the official capacity claims against them under the Eleventh Amendment. Eleventh Amendment immunity as applied to state officials in their official capacity only bars claims for damages, not for injunctive relief, and Plaintiff asserts claims for both injunctive relief and monetary relief in this matter. *See O'Callaghan v. Hon. X*, No. 16-1401, 2016 WL 4245434, at *2 (3d Cir. Aug. 11, 2016) ("[T]he Eleventh Amendment does not generally bar prospective declaratory or injunctive relief.").