**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASMAR THOMPSON, | Civil Action No. 16-1913 (MAS) (TJB) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER GARY M. LANIGAN, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon a Motion for Summary Judgment by Nurse Practitioner Donique Ivery ("Ivery") (Ivery Mot., ECF No. 168) and a separate Motion for Summary Judgment by Defendants Stephen D'Ilio, Sergeant Gil, Officer Rodriguez, and Officer Sylvester (collectively, "DOC Defendants") (DOC Defs.' Mot., ECF No. 169).[1] *Pro se* Plaintiff Asmar Thompson ("Plaintiff") opposes the Motions for Summary Judgment (collectively, "Motions"). (Pl.'s Opp. to Mot., ECF No. 173.) For the reasons set forth below, the Court grants the Motions.

## I. PROCEDURAL BACKGROUND

On or about April 6, 2016, Plaintiff filed a Complaint against numerous defendants alleging various violations of his constitutional rights and related state law claims. (Compl., ECF No. 1.) Defendant Ivery filed an Answer to the Complaint. (Answer, ECF No. 41.) Defendants

---

[1] Plaintiff has failed to serve Defendants Terry, Salvador, Martir and Ruck. (ECF No. 12; ECF No. 39 at 7.)

Commissioner Gary M. Lanigan, Stephen D'Ilio, Officer Rodriguez, Officer Sylvester, Sergeant Gil, Hearing Officer DiBenedetto, Lieutenant Kennedy, and Dr. Ralph Woodward (collectively, "Motion to Dismiss Defendants") filed a joint motion to dismiss, seeking to dismiss certain claims against them. (Mot. to Dismiss, ECF No. 42.) The Court granted in part and denied in part the motion to dismiss,[2] dismissing Defendants Hearing Officer DiBenedetto, Lieutenant Kennedy, Dr. Ralph Woodward, and Commissioner Gary M. Lanigan from the case. (Order, Apr. 24, 2017, ECF No. 101.) In the Opinion, the Court construed Plaintiff's Complaint to raise state law tort claims and seven federal claims against the Motion to Dismiss Defendants: (1) an Eighth Amendment excessive force claim; (2) an Eighth Amendment failure to protect claim; (3) a due process claim for an alleged false disciplinary charge; (4) a claim for the taking and destruction of Plaintiff's personal property; (5) a First Amendment denial of access to the courts claim for tampering with Plaintiff's legal mail; (6) a retaliation claim for Plaintiff's filing of grievances; and (7) a denial of medical services claim against Defendant Woodward. (Op. 6, Apr. 24, 2017, ECF No. 100.) The Court dismissed Plaintiff's due process, denial of medical services, and state law claims against the Motion to Dismiss Defendants. (*Id.* at 16.)

Following discovery, the DOC Defendants filed a Motion for Summary Judgment (DOC Defs.' Mot.) and Ivery filed a separate Motion for Summary Judgment (Ivery Mot.). Plaintiff filed a response (Pl.'s Opp. to Mot.) and Ivery filed a Reply (Ivery Reply, ECF No. 176).

---

[2] Plaintiff had previously filed motions to supplement and amend his complaint (ECF Nos. 43, 69), which the Court denied in that same Opinion (ECF No. 100 at 14–16).

## II. FACTUAL BACKGROUND

This case centers around an incident that occurred in New Jersey State Prison ("NJSP") on May 1, 2014, and the follow-up medical care Plaintiff received after the incident. The parties have varying accounts of what occurred, based on the record evidence.

### A. DOC Defendants' Statement of Facts

On May 1, 2014, Plaintiff was escorted "from 2EE to 7 Left for placement on Ad-Seg status." (Decl. of Kai. W. Marshall-Otto, Esq. ("Marshall-Otto Decl.") Ex. A, at DOC-006, ECF No. 169-3.) Plaintiff was handcuffed and escorted to the nurse's station by Officer Rodriguez and Officer Terry for evaluation by Nurse Ruck. (*Id.*) Plaintiff stated to the medical staff that he would not go anywhere, and he would hurt himself if moved. (*Id.*) Nurse Ruck contacted the on call mental health doctor, Dr. Jordan, who ordered that Plaintiff be placed on constant watch. (*Id.*) Following the evaluation, Plaintiff was escorted into cell # 12 EE by Officer Rodriguez, Officer Terry and Sergeant Gil. (*Id.*) Officers Salvador and Martir followed to conduct a strip search before placing Plaintiff on constant watch.[3] (*Id.*) Plaintiff's waist belt was undone, and his right handcuff restraint was removed. (*Id.*) Plaintiff then began "swinging wildly" at Sergeant Gil and attempted to grab him. (*Id.*) Sergeant Gil punched Plaintiff several times in the face. (*Id.*) Officers Rodriguez, Terry, Salvador and Martir wrestled Plaintiff to the ground. (*Id.*) Sergeant Gil then "attempted to deploy chemical agents . . . which failed to deploy correctly." (*Id.*) After the inmate became more aggressive, Sergeant Gil defended himself by hitting Plaintiff "with the can of OC once, on left side of the face and called for the activation of the Emergency Code 33." (*Id.*) Plaintiff then became compliant and was restrained and handcuffed by Officer Rodriguez. (*Id.*)

---

[3] As noted above, although Terry, Savaldor and Martir are named defendants, they did not join this motion as they were never properly served.

3

In their statement of material facts, DOC Defendants state that Plaintiff has "adduced no evidence" pertaining to Plaintiff's claims for failure to intervene, denial of access to the courts, retaliation and destruction of property. (DOC Defs.' Statement of Facts ¶¶ 27–30, ECF No. 169-2.)

DOC Defendants next state that Plaintiff failed to "utilize the Inmate Remedy System before applying to the courts for relief." (*Id.* ¶ 32.) Defendants state that a search of all records maintained by NJSP concerning administrative remedies, JPAY inquiries, and grievances made by Plaintiff between April 1, 2014 and May 1, 2016 reveals that only one submission by Plaintiff mentions the May 1 assault and only does so tangentially. (*Id.* ¶¶ 40–41.) That grievance was in reference to receiving care from an ear specialist, in which Plaintiff wrote that the issue dated back to the May 1, 2014 incident when he was "assaulted by officers . . . , an[d] had to submit[] an inmate grievance to be seen[.]" (Decl. of Jessica Smith ("Smith Decl.") Ex. C, at 22, ECF No. 169-4.[4])

### B. Ivery's Statement of Facts

On May 1, 2014, Plaintiff was seen by Jeremy Berg, RN, complaining of blurring to his eyes, irritation and vision loss, as a result of being sprayed by pepper spray. (Def.'s Motion to Seal Ex. A, at 444–45, ECF No. 167.) Plaintiff also complained of left side pain from being knocked to the ground. (*Id.* at 445.) Plaintiff was told to flush his eyes with large amounts of water to flush out the pepper spray. (*Id.*) Plaintiff was given pain medication and advised to follow-up as needed. (*Id.*) Plaintiff was seen on May 5, 2014, for an initial visit regarding placement in detention and administrative segregation. (*Id.* at 437.) Plaintiff did not raise any complaints. (*Id.* at 438.)

---

[4] The Smith Declaration is not paginated. The Court, accordingly, utilizes the ECF page numbers for ease of reference.

4

Plaintiff saw Ivery on June 2, 2014, complaining that he could "barely hear" out of his left ear and that he was assaulted by staff on May 1. (*Id.* at 428–30.) The notes of the external ear examination were normal, and the notes discussing Plaintiff's hearing state: "left ear canal narrow, tms clear, no discharge, bleeding mild redness left ear canal." (*Id.* at 429.) Laboratory tests and a left rib x-ray were ordered. (*Id.* at 430.) On June 5, 2014, Plaintiff was again seen by Ivery. (*Id.* at 425.) Plaintiff's external ear examination was normal, and his otoscopic exam revealed that Plaintiff's canals were clear, his tympanic membranes were intact with good movement and no fluid. (*Id.* at 426.) Plaintiff's hearing was noted to be "grossly intact." (*Id.*) Ivery's notes indicate that Plaintiff complained that "he [cannot] hear out of left ear as well as he has in the past." (*Id.*) Ivery reassured Plaintiff that his ear exam was normal, but that she would consider ordering an audiology evaluation if his symptoms persisted. (*Id.* at 427.)

On August 24, 2015, more than a year later, Plaintiff was seen by Defendant Ivery, complaining of left hearing loss. (*Id.* at 128–30.) The ear examination was normal, the otoscopic examination was normal, and Plaintiff's hearing was noted to be "grossly intact." (*Id.* at 129.) Ivery's notes indicate: "left ear tm clear, little wax in ear canal, [inmate] able to [follow] directions & answer questions when this provider[] speaks with him but head is turned away even with some back ground noise on unit." (*Id.* at 130.)

Following Plaintiff's motion for a temporary restraining order in this case (TRO Mot., Oct. 6, 2016, ECF No. 45), Plaintiff was seen on November 21, 2016, for a reevaluation (*see* Ivery Statement of Facts ("Ivery SOF"), ¶¶ 8–9, ECF No. 168-2). The examination was conducted by James Brewin, APN. (Def.'s Motion to Seal Ex. A, at 46.) The external ear exam was normal, the otoscopic exam found "moderate cerumen in canals – L>R" and Plaintiff's hearing was noted

5

to be "grossly intact". (*Id.* at 47.) Plaintiff was referred to an ENT for an evaluation. (Ivery SOF ¶ 9.)

An ENT consultation was conducted on December 22, 2016. (Def.'s Motion to Seal Ex. A, at 35.) The notes indicate that Plaintiff complained of hearing loss in his left ear. (*Id.*) The ENT notes reflect that an audiometric evaluation was recommended. (*Id.* at 36.) An audiology evaluation was performed on January 23, 2017, which noted "mild flat mixed hearing loss AS (left ear). Left ear showed poor word recognition." (*Id.* at 27–28.)

Plaintiff was seen for a follow-up consultation with an ENT on January 26, 2017, who recommended a CT scan. (*Id.* at 26.) A CT scan was conducted on Plaintiff's head/brain on February 10, 2017, which concluded "[n]o acute abnormality evident." (*Id.* at 17.) Plaintiff was seen by an ENT on February 23, 2017, who recommended that Plaintiff have a hearing evaluation with an audiologist. (*Id.* at 9–10.)

Plaintiff was seen on March 8, 2017, for a follow-up regarding his ENT consultation. (*Id.* at 4.) The notes indicate that Plaintiff complained of decreased hearing in his left side. (*Id.* at 5.) The results of the external ear exam were normal, and Plaintiff's hearing was noted to be "grossly intact." (*Id.*) A follow up visit with audiology was recommended. (*Id.* at 6.)

On March 30, 2017, Plaintiff was evaluated by audiology. (Ivery SOF ¶ 16.) A CT scan was negative for abnormal findings. (*Id.*) An audiometric exam revealed findings consistent with mixed hearing loss on the left side. (*Id.*) It was recommended that Plaintiff receive a custom bilateral hearing aid , because he was a good candidate for amplification. (*Id.* ¶ 17.) On April 20, 2017, Plaintiff had an audiology consultation and was fitted for a hearing aid programmed for his left ear. (Def.'s Motion to Seal Ex. A, at 444–45.)

C.  **Plaintiff's Statement of Facts**

Without citing to any record evidence, Plaintiff generally disputes Defendants' statement of facts. (*See* Pl.'s Opp. to Mot.) Plaintiff states that he was assaulted by officers on May 1, 2014, and lost hearing as a result. (*Id.* at 1.[5]) He explains that he complained of hearing loss on May 1, filed a grievance on May 8, and complained again on June 2, 2014. (*Id.* at 3.) He states that he was seen on June 2, 2014, in the medical department "a month after the incident which was the first time Plaintiff verbally request[ed] to be seen by a specialist. The Plaintiff was not seen until he filed a Temporary Restraining Order [on] January 26, 2017." (*Id.* at 1.) Plaintiff states that "[D]efendant acted with deliberate indifference when she denied me access to the specialist by protecting officers involved in the assault . . ." (*Id.* at 1–2.) Plaintiff's declaration in support of his opposition to the Motions for Summary Judgment states that Ivery denied him access to a specialist for three years. (Pl.'s Decl. in Opp. to Mot. ¶ 4, ECF No. 173-1.)[6]

Plaintiff has also filed numerous exhibits, without referencing the documents in his statement of facts or in his brief. Plaintiff attaches the same medical notes that have previously been outlined above. Plaintiff also attaches various grievances. Plaintiff submitted an inmate remedy form on May 8, 2014, stating that he was taken to the medical department on May 1, and stating that he felt his ribs were broken, he could not hear out of his left ear, and he was repeatedly

---

[5] The page numbers associated with Plaintiff's Opposition to the Motion refer to the ECF page numbers.

[6] Plaintiff has also filed two documents entitled "Statement of Disputed Factual Issues," in which he raises issues that he believes create genuine disputes of material fact in this case. (*See* ECF Nos. 173-3, 173-4) (capitalized in originals). Because Plaintiff does not point to any facts that are part of the record evidence, but instead raises general questions which he believes are subject to material dispute, the Court will not recite each point in this Opinion.

slammed on his left side. (Pl.'s Exs. in Resp. to Mot. 37, ECF No. 173-5.[7]) The grievance complains that nothing was done for his pain, even after Plaintiff informed psychologists of his pain on May 2 and May 5. (*Id.* at 37–38.) The response to the grievance states that Plaintiff was seen by medical professionals numerous times after May 1. (*Id.* at 37.)

Plaintiff filed a letter on April 15, 2015, addressed to Dr. Woodward, complaining of hearing loss and that he was not given appropriate care for the hearing loss. (*Id.* at 59.) Plaintiff submitted an inmate grievance on June 12, 2015, complaining that he was assaulted by officers on May 1, 2014, which caused a loss of hearing in his left ear. (*Id.* at 39.) In the grievance, Plaintiff complained that Ivery did not properly treat his hearing. (*Id.* at 39–40.) Plaintiff submitted a letter regarding his medical concerns on July 27, 2015. (*Id.* at 56.) In the letter, he writes that he complained of pain and issues with his hearing and Ivery did nothing short of looking in his ear. (*Id.*) He stated that Ivery "failed her duty by trying to protect the officers involved because beside her physical[ly] looking into my ear I *have not* seen anyone else or been referred as to my understanding." (*Id.* at 57.) Plaintiff submitted another grievance on December 3, 2015, complaining that his past grievances were not being responded to because they were tampered with. (*Id.* at 54.) Plaintiff submitted an additional grievance on December 12, 2015, complaining that he was not receiving care for his ear as far back as 2014. (*Id.* at 45.) The response to the grievance states that Plaintiff's chart was reviewed, and nothing indicated a specialist was needed. (*Id.*)

Plaintiff testified at his deposition that following the assault, he complained of hearing loss, but was unable to get paperwork to write a grievance. (Pl.'s Dep. 20:24–21:14, ECF No. 178.) Plaintiff was then denied medical attention. (*Id.* 21:15–17.) When Plaintiff was able to write a

---

[7] The page numbers associated with "Pl.'s Exs. in Resp. to Mot." refer to the ECF page numbers.

8

grievance, he wrote about his loss of hearing and was taken to medical and checked by Ivery. (*Id.* 21:18–23.) Plaintiff testified that Ivery examined him, and said she could not see anything. (*Id.* 21:21–23.) Plaintiff responded that it would not be possible to see the loss of hearing. (*Id.* 21:24-22:4.) Plaintiff testified that he requested to see a specialist on that occasion, and every subsequent time that he was seen by Nurse Ivery. (*Id.*)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 422-23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the non-moving party "may not rest upon the mere allegations or denials of [the] pleading." *Id.* at 322 n.3 (quoting Fed. R. Civ. P. 56(e)). The non-movant must "do more than simply show that there

is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

## IV.  ANALYSIS

### A.  Ivery's Motion for Summary Judgment

Ivery argues that she is entitled to summary judgment on Plaintiff's Eighth Amendment claim as Plaintiff cannot prove that she was deliberately indifferent to Plaintiff's medical need. "The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "[P]rison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

To succeed on an Eighth Amendment claim, a plaintiff "must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'" *Id.* (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). The Third Circuit has identified a variety of forms that deliberate indifference may commonly take, including: "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse*, 182 F.3d at 197). Deliberate indifference may also be shown where a doctor "insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of

10

serious harm." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). A mere "inadvertent failure to provide adequate medical care"—*i.e.*, negligent diagnosis or treatment—will not create an Eighth Amendment claim. *Estelle*, 429 U.S. at 105–06.

1. *Serious Medical Need*

Ivery argues that Plaintiff has not established that he suffers from a serious medical need. Serious medical needs are "one[s] . . . diagnosed by a physician as requiring treatment or one[s] that [are] so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Given that Plaintiff's hearing loss was ultimately diagnosed as requiring a hearing aid, the Court will presume that Plaintiff's medical need is serious for purposes of this analysis. The Court turns to whether Ivery exhibited deliberate indifference towards Plaintiff's left ear hearing loss.

2. *Deliberate Indifference*

A claim for deliberate indifference survives summary judgment only if the plaintiff "make[s] a subjective showing that the defendants were deliberately indifferent to his medical needs[.]" *Pearson*, 850 F.3d at 534 (citations and internal quotations omitted). The "deliberate indifference standard requires obduracy and wantonness which has been likened to conduct that includes recklessness or a conscious disregard of a substantial risk of serious harm." *Hankey v. Wexford Health Sources, Inc.*, 383 F. App'x 165, 168–69 (3d Cir. 2010) (internal quotation marks and citation omitted). "[T]he mere receipt of inadequate medical care does not itself amount to deliberate indifference—the defendant must also act with the requisite state of mind when providing that inadequate care." *Pearson*, 850 F.3d at 535.

Plaintiff argues that Ivery's repeated failure to refer him to a specialist for his hearing loss evinces deliberate indifference. While the record evidence establishes that Plaintiff repeatedly complained to Nurse Ivery of hearing loss and requested to be seen by a specialist, there is nothing in the record to indicate that Ivery's treatment decisions were constitutionally deficient. Ivery's medical notes show that she conducted multiple medical examinations of Plaintiff's ear following his complaints, and found no abnormalities. Plaintiff's hearing was noted to be "grossly intact," and Plaintiff was able follow directions and answer Ivery's questions. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment h[er] behavior will not violate a prisoner's constitutional rights.") The fact that Ivery was ultimately mistaken in her diagnosis does not change this Court's analysis. *See Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) ("Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation unless deliberate indifference be shown.") (citing *White*, 897 F.2d at 110); *Brown v. Beard*, 445 F. App'x 453, 455 (3d Cir. 2011) ("Negligence or medical malpractice does not rise to the level of a constitutional violation."). Further, while Plaintiff wished to be seen by a specialist, this alone is not a basis to find an Eighth Amendment violation. *See Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (explaining that "[a] prisoner does not have the right to choose a specific form of medical treatment") (citation and quotation marks omitted); *Williams v. Kort*, 223 F. App'x 95 (3d Cir. 2007) (affirming grant of summary judgment where prison doctor saw prisoner for medical complaints, but did not refer inmate to specialist); *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) (complaints about medical care which "reflect a disagreement with the doctors over the proper means" of treating the prisoner does not rise to the level of a constitutional violation).

The Court recognizes that in one of Plaintiff's grievances, he appears to surmise that Ivery failed to refer him to a specialist because she was "trying to protect the officers involved." (Pl.'s Exs. in Resp. to Mot. 57.) Plaintiff did not mention this in his deposition testimony. Rather, Plaintiff appears to speculate as to Ivery's intentions based on Plaintiff's frustration regarding the medical care he received from Ivery. Plaintiff has simply not presented any evidence from which a reasonable jury could conclude that Ivery possessed the culpable mental state required for a claim of deliberate indifference. There is nothing to indicate that Ivery *intentionally* refused, delayed, or prevented Plaintiff from receiving care for his hearing loss, nor is there any evidence showing that Ivery insisted on a course of treatment she *knew* to be ineffective. *See Parkell*, 833 F.3d at 337; *White*, 897 F.2d at 109. For these reasons, Ivery's Motion for summary judgment must be granted.

### B. DOC Defendants' Motion for Summary Judgment

#### 1. *Exhaustion of Administrative Remedies*

The DOC Defendants argue that Plaintiff's excessive force claim should be dismissed because Plaintiff failed to administratively exhaust his claim. Pursuant to 42 U.S.C. § 1997e, a prisoner is required to exhaust all available administrative remedies before he may file a federal civil rights suit challenging prison conditions. *See Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) (explaining that "excessive force is indeed a 'prison condition' for Section 1997e(a) purposes"). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). In determining whether a prisoner has successfully exhausted administrative remedies, the courts

look to the grievance regime of the prison facility to determine the steps required to fully exhaust. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

According to the NJSP inmate handbook,[8] "The *Inmate Remedy System* provides a mechanism for inmates to address complaints . . . to correctional facility Administration for resolution through the use of the electronic JPAY system, Inmate Inquiry Form, the Inmate Grievance Form and the appeal process." (Smith Decl. Ex. B, at 13.) A form is processed and returned within thirty working days. (*Id.*, Ex A, at 9.) An inmate can appeal within ten days of the date the response is returned, by completing part 4 of the inmate remedy form. (*Id.* at 10.) The Administrator/Designee then renders a decision on the appeal. (*Id.*) "Inmates are required to utilize and exhaust the **Inmate Grievance Form** and **Appeal** process before applying to the courts for relief." (*Id.*, Ex. B, at 13.) The handbook further provides, "[o]nly one (1) *Inmate Remedy Form* (*Inmate Inquiry and Grievance forms*) *shall* be used for each specific grievance or question to be addressed." (*Id.* at 14.) Pursuant to N.J. Admin. Code § 10A:8-3.2(a), which governs the rules pertaining to inmate handbooks in New Jersey, "[e]ach inmate shall be provided a copy of the Inmate Handbook within two business days of admission to the correctional facility unless compelling security or safety reasons dictate otherwise[.]"

As outlined in the factual section of this Opinion, DOC Defendants attach what they declare to be all records maintained by NJSP of Plaintiff's remedy forms, JPAY inquiries and grievances between April 1, 2014, and May 1, 2016. (Smith Decl. ¶ 15.) They argue that Plaintiff's single and tangential reference to his assault by officers in a JPAY inquiry submitted in December of 2015 is insufficient to satisfy the administrative exhaustion requirement.

---

[8] DOC Defendants attach two exhibits containing excerpts of the NJSP inmate handbook. Exhibit A contains excerpts of the inmate handbook in place from 2007 through 2015. (Smith Decl. Ex. A, ECF No. 169-4.) Exhibit B contains excerpts of the 2015 inmate handbook. (*Id.* Ex. B.)

14

Plaintiff does not address the issue of exhaustion in his opposition to the Motions. In his attached exhibits, Plaintiff provides two inmate remedy system forms, from May and June of 2014, in which he relayed that he suffered medical injuries as a result of being assaulted.[9] (*See* Pl.'s Exs. in Resp. to Mot. 37–40.) Neither of those forms was appealed to a prison administrator, as part 4 of both forms was left blank. (*Id.*) When asked about whether he appealed any of his grievances concerning his underlying assault, Plaintiff stated in his deposition "I don't recall." (Pl.'s Dep. 56:24–57:1.) Plaintiff testified:

> Q. Okay. So what I'm asking is did you ever submit any separate grievances let's say to prison administration or any remedy forms specifically saying I was assaulted on May 1st of 2014?
>
> A. Yes.
>
> Q. And I need to be compensated or these officers need to be disciplined?
>
> A. Yes. I don't remember -- I don't recall saying compensated or nothing like that. But I can recall filing a grievance as far as me being assaulted.
>
> Q. And what kind of redress did you seek? Do you understand the concept [of] redress?
>
> A. Yes.
>
> Q. Okay.
>
> A. None.
>
> Q. None. So did you ever appeal -- did those grievances get addressed and denied? Or is it fair to say that that would be impossible for them to deny it because you didn't seek any redress?
>
> A. Like I said, the same people that -- the same officers that saw it, they were supervisors. There is no legal redress as far as nothing to be redressed as far as institutional.
>
> Q. Did you ever appeal any of those grievances to the administration or anything of that nature?

---

[9] These forms do not appear to have been included in the DOC Defendants' exhibits.

15

> A. I don't recall.
>
> . . .
>
> Q. So you've been handed two different exhibits today –
>
> A. Yes.
>
> Q. -- with grievances and inmate remedy form requests, health form requests. So all told we're probably looking at about 30 pages of grievances, of inmate remedy forms, of health request forms.
>
> A. Yes.
>
> Q. I don't see a single one seeking redress for the assault that you allege on May 1st of 2014. So are there other ones out there that you have in your possession that you can provide to me?
>
> A. No, not – you're saying that the DOC provided you with this?
>
> Q. So I have what you have, right?
>
> A. Yes. If you're saying that the DOC provided you with this, because the DOC has everything on file.

(Pl.'s Dep. 55:24–58:17.)

The Court finds that the DOC Defendants have met their burden to show that Plaintiff failed to exhaust his administrative remedies. Even assuming, based on the record, that Plaintiff filed grievances concerning his underlying excessive force claim, those grievances were never appealed. This is verified by the blank section in part 4 of the remedy forms. (*See* Pl.'s Exs. in Response to Mot. 37–40.) Plaintiff's inconclusive and vague deposition testimony—"I don't recall"—when asked about appealing his excessive force claim, fails to change the outcome. *See Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) (explaining that "vague[]" assertions "without providing any specifics" on the issue of exhaustion is insufficient to establish a genuine dispute of material fact). Finally, the JPAY inquiry referenced by the DOC Defendants, (Smith

16

Decl. Ex. C, at 22), is also insufficient to establish a genuine dispute of material fact regarding exhaustion. That inquiry was in reference to being seen by a specialist for Plaintiff's ear. (*Id.*) After receiving a response, only then did Plaintiff reply by stating that the issue of his ear was in connection to being assaulted by officers. (*Id.*) Because the NJSP inmate handbook requires each concern to be addressed independently, (*id.*, Ex. B., at 14), the Court simply cannot construe that inquiry as creating a dispute of material fact on the exhaustion of Plaintiff's excessive force claim. The Court, therefore, grants summary judgment in the DOC Defendants' favor on Plaintiff's excessive force claim.[10]

2. *Access to Courts*

In his Complaint, Plaintiff alleged that his postage remits were tampered with by Officer Sylvester, which caused a delay in his filing of a brief with the appellate court of New Jersey. (Compl. 7 ¶ 10.) The record on summary judgment provides no evidence establishing that Officer Sylvester violated Plaintiff's constitutional rights. Plaintiff provides a single JPAY inquiry in which he appears to complain about tampering with inmate grievances. (Pl.'s Exs. in Resp. to Mot. 54.) That inquiry fails to implicate Officer Sylvester in any violation. *See Farrar v. McNesby*, 639 F. App'x 903, 906–07 (3d Cir. 2016) ("[A] party may establish liability for deprivation of a constitutional right only through a showing of personal involvement by each defendant." (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988))). Accordingly, the DOC Defendants' summary judgment motion is granted on Plaintiff's access to courts claim.

---

[10] The Court notes that because the DOC Defendants do not appear to have raised the issue of exhaustion on Plaintiff's remaining § 1983 claims, the Court addresses those claims on the merits below. *See Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 220–24 (2007) ("There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim.").

17

3. *Property Claim*

Plaintiff alleged in his Complaint that property was stolen from his cell between July and August of 2014. (Compl. 8 ¶ 14, 11 ¶ 8.) The record evidence is insufficient to establish a property claim. While Plaintiff provides e-mail messages and forms which show that various individuals inquired into his lost property, (Pl.'s Exs. in Resp. to Mot. 46–52), these documents fail to establish how any of the DOC Defendants in this action were personally involved in this matter. *See D'Costa v. Plaza*, No. 15-5310, 2019 WL 856780, at *7 (D.N.J. Feb. 14, 2019) (quoting *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976) ("Section 1983 liability requires a 'showing of direct responsibility' by the named defendant and to eschew any 'theory of liability' in which defendants played 'no affirmative part in depriving any[one] . . . of any constitutional rights.'"). For this reason, the DOC Defendants' summary judgment motion is granted on Plaintiff's property claim.

4. *Retaliation*

In the Complaint, Plaintiff asserted that he was retaliated against by Sergeant Gil, Officer Sylvester, and other officers. (Compl. 6–7 ¶¶ 9–10, 12 ¶ 11.) Once again, the record on summary judgment is devoid of any facts supporting Plaintiff's claim of retaliation. *See Owens v. Coleman*, 629 F. App'x 163, 168 (3d Cir. 2015) (citing *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)) ("A party resisting a [summary judgment] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."). The DOC Defendants' summary judgment motion is granted on this claim.

5. *Claims against Defendant D'Ilio for Failure to Protect*

The Complaint further alleged Eighth Amendment failure to protect claims against Defendant D'Ilio for (1) placing Plaintiff in "harms way on the protective custody units" where

Plaintiff was harassed by Sergeant Gil; and (2) not placing Plaintiff in protective custody, which resulted in an assault by an inmate. (Compl. 6 ¶ 9, 10 ¶ 6.)

"The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors." *Jenkins v. Hayman*, No. 09-4989, 2013 WL 3201326, at *14 (D.N.J. June 24, 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To establish a failure to protect claim, an inmate must demonstrate that: (1) he or she is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison official acted with "deliberate indifference" to his or her health and safety. *Farmer*, 511 U.S. at 834. In order to survive summary judgment, a plaintiff must produce sufficient evidence supporting the inference that the defendant "knowingly and unreasonably disregarded an objectively intolerable risk of harm." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). Plaintiff has not met his burden. The record is devoid of any evidence establishing that Defendant D'Ilio was aware of and disregarded any risk to Plaintiff's health or safety. *Robin Const. Co. v. United States*, 345 F.2d 610, 613 (3d Cir. 1965) ("We have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment."). Plaintiff's claim against Defendant D'Ilio does not survive summary judgment.

## V.   DISMISSAL OF NON-SERVED DEFENDANTS

Plaintiff has failed to effect service on Defendants Terry, Salvador, Martir and Ruck. (ECF No. 12; ECF No. 39 at 7.) A plaintiff in a civil action in federal court must complete service of his complaint within 90 days of filing or within a period prescribed by the District Court. *See* Fed. R. Civ. P. 4(m); *Mathies v. Silver*, 450 F. App'x 219, 221 (3d Cir. 2011) (affirming district court's dismissal of action in which plaintiff failed to effect service). If the plaintiff fails to complete

service within the specified time, Rule 4(m) requires the Court to determine whether the plaintiff has shown good cause for the failure. *See Mathies*, 450 F. App'x at 221. The Court finds that Plaintiff has not demonstrated good cause for the failure to serve these defendants. Plaintiff should have been aware of his failure to serve these defendants. Nevertheless, he failed to ask the Court for an extension of time in which to serve them. In such circumstances, the district court may either dismiss the claims against the defendants or grant a discretionary extension. *See Mathies*, 450 F. App'x 221. The Court will dismiss without prejudice the claims against these defendants. If Plaintiff believes he has good cause for his failure to serve these defendants, Plaintiff may, within thirty days, file a written statement which sets forth detailed arguments to demonstrate good cause for consideration by the Court along with a request to reinstate the defendants who have not been served and effect service on them.

## VI. CONCLUSION

For the reasons expressed above, the Court will grant the Motions for Summary Judgment (ECF Nos. 168, 169) and will dismiss without prejudice the action against Defendants Terry, Salvador, Martir and Ruck for failure to effect service. Plaintiff may file within thirty (30) days an affidavit or declaration demonstrating good cause for his failure to serve this action against the aforementioned Defendants. An appropriate order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 30, 2019

20